**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KARL RUSSELL AND ERIKA** | § | |
| **RUSSELL,** | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO._____** |
| | § | **(JURY)** |
| **CENTAURI SPECIALTY** | § | |
| **INSURANCE COMPANY, MID-** | § | |
| **AMERICA CATASTROPHE** | § | |
| **SERVICES, RONALD GIBSON, AND** | § | |
| **CRAIG CUPIT,** | § | |
|     **Defendants.** | § | |

## COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COME NOW, Karl Russell and Erika Russell, Plaintiffs herein, ("the Russells" or "Plaintiffs") complaining of Centauri Specialty Insurance Company ("Centauri"), Mid-America Catastrophe Services ("Mid-America"), Ronald Gibson, ("Gibson") and Craig Cupit ("Cupit") (at times referenced collectively herein as "Defendants"), and for cause of action, Plaintiffs would respectfully show this Honorable Court the following:

## PARTIES

1.    Plaintiffs **Karl and Erika Russell** ("Plaintiffs" or "the Russells") are individuals residing in Harris County, Texas.

2.    Defendant **Centauri Specialty Insurance Company** ("Centauri") is a domestic insurance company engaging in the business of insurance in the State of Texas. The causes of action in this suit arise out of this Defendant's business activities in the State of Texas. This Defendant may be served with process by serving its registered agent for service of process, Cogency Global, 16601

Elm Street, Suite 4360, Dallas, Texas 75201.

3.      Defendant **Mid-America Catastrophe Services** ("Mid-America") is a domestic company

engaging in the business of insurance in the State of Texas. The causes of action in this suit arise

out of this Defendant's business activities in the State of Texas. This Defendant may be served

with process by serving its registered agent for service of process, Stacy Story at 26108 Lookout

Falls, San Antonio, Texas.

4.      Defendant **Ronald Gibson** ("Gibson") is an individual residing in and domiciled in the

State of South Carolina. At all times material to the allegations in this Petition, Defendant Ronald

Gibson has done business in Texas as an insurance adjuster. This Defendant may be served with

personal process by a process server at his place of business at 316 Oakhurst Pl., Blythewood,

South Carolina, 29016

5.      Defendant **Craig Cupit** ("Cupit") is an individual residing in and domiciled in the State of

Louisiana. At all times material to the allegations in this Petition, Defendant Craig Cupit has done

business in Texas acting as an insurance adjuster. This Defendant may be served with personal

process by a process server at his place of business at 15534 Treasurer Ave., Baton Rouge,

Louisiana 70817.

## JURISDICTION

6.      This Court has jurisdiction based on diversity of citizenship of the parties under 28 U.S.C.

§1332 because Plaintiffs are Texas residents and Defendants are individuals that reside in a state

other than the State of Texas and/or entities that have their principal place of business or state of

incorporation in a state other than the State of Texas and because the amount in controversy

exceeds Seventy-Five Thousand and No/100 Dollars ($75,000.00).

## VENUE

7.      Venue is proper in the Southern District of Texas, Houston Division, under 28 U.S.C. §1391(b)(2) since the occurrence made the basis of this Complaint took place in Harris County which is in the Southern District of Texas.

## FACTS

8.      This is a first-party insurance claim dispute arising out of Hurricane Harvey.

9.      Plaintiffs are the owners of residential property located at 10358 Sagebrook Dr., Houston, Texas 77089, in Harris County, Texas ("the Property").

10.      Centauri issued and sold to Plaintiffs a Homeowner's Insurance Policy ("the Policy") to protect and insure the Russells' dwelling, other structures, and personal property, among other items, against covered loss events like a hurricane.

11.      On or about August 25, 2017, Hurricane Harvey made landfall along the Texas Gulf Coast at Rockport, Texas as a Category 4 Hurricane with extreme wind speeds reaching 130 mph or higher. From August 25th through September 1, 2017, Hurricane Harvey continued to cause widespread devastation and destruction along the Texas Gulf Coast, including producing a record number of tornados, extreme wind speeds, and record setting amounts of rain fall. The Russells' Property sustained significant wind and water intrusion damages as a result of Harvey.

12.      Specifically, the Russells' roof sustained extensive wind damage, including but not limited to, multiple lifted shingles which exposed the wood decking in the attic to the rain and allowed water to enter into the home and damage the ceilings, walls, insulation, flooring, carpeting, and kitchen cabinets. In the kitchen, in particular, an area of the ceiling had collapsed. One of the kitchen's skylight's flashing on the roof had lifted during the storm and caused water to leak in on the kitchen ceiling.

13.     The Russells quickly filed a claim (the "Claim") on their insurance Policy with their insurance company, Centauri, for roof, water, and wind damage as a result of Hurricane Harvey.

14.     At that time, and pursuant to their Policy, the Russells made a simple request to Centauri— to cover and pay for the cost of repairs to their Property, such as the replacement of the roof, as well as repair of the interior damages caused by Hurricane Harvey.

15.     At all times relevant, the Russells were and are entitled to benefits under their Centauri Policy as it specifically covered the Russells' dwelling, for damages caused by covered perils, including hurricanes like Harvey, windstorms and hail; and further, the Policy provided Centauri would pay the replacement cost value ("RCV") to repair and/or replace the damages caused by the covered peril.

16.     Centauri hired Mid-American Catastrophe Services, ("Mid-American") an adjusting company who then assigned Ronald Gibson ("Gibson") as the individual adjuster responsible for assessing, documenting, and adjusting the Russells' Claim. Centauri assigned Craig Cupit as the inside claims' examiner.

17.     On or about September 1, 2017, Gibson inspected Plaintiffs' Property. Gibson was not adequately equipped, properly trained/instructed in handling the adjustment of insurance damage claims for or properly supervised by Centauri and/or Mid-America and, as a result, he failed to perform an adequate investigation of the Russells' Claim that would meet the minimum standards of performance pursuant to industry standards, as well as Sections 21.203 and 21.205 of the Texas Administrative Code, applicable law, or otherwise. *See* TEX. ADMIN. CODE §§21.203, 21.205.

18.     Gibson's estimate, among other errors, failed to use the proper, correct price list and failed to include overhead and profit. Gibson undervalued and underestimated Plaintiffs' covered damages. Gibson's inadequate investigation and estimate were relied upon by Centauri which

4

misrepresented to Plaintiffs their damages and the actual amount that was owed to Plaintiffs under their Policy. In short, Centauri's and Gibson's conduct resulted in the Claim's undervaluation and under-payment.

19.    The Russells complained to Centauri about the handling of their Claim and the under-payment on or about January 22, 2018. Centauri and/or Cupit assigned the Claim to an engineering firm, U.S. Forensic, which then assigned engineer, John A. Fowler ("Fowler"), to conduct an engineering evaluation. U.S. Forensic, however, found no "functional damage" to the roof by wind.

20.    It is clear from the facts that Centauri, Cupit, Mid-America, Gibson, U.S. Forensic and Fowler, set out to deny and/or underpay properly covered damages. Centauri failed to provide full coverage for the damages sustained by the Russells and Gibson and Cupit under-scoped and undervalued the damages, thus denying payment to the Russells pursuant to their Policy. In short, Plaintiffs' Claim was improperly adjusted. To this date, the Russells have yet to receive full and sufficient payment under the Policy for their Hurricane Harvey damages.

21.    The inadequacy of Centauri, Gibson, Mid-America, Culpit, U.S. Forensic and Fowler's substandard inspections is evidenced by the fact that some covered damages and necessary repairs were omitted from the inspection estimates, and damages that were included in the estimates were grossly undervalued. The engineering report was inaccurate as well.

22.    Centauri failed to adequately supervise, train, and oversee Gibson and Mid- America, but nonetheless, Centauri adopted Gibson and Mid-America's estimate without question. As a result of Gibson's shoddy investigation, followed by U.S. Forensic and Fowler's inadequate engineering investigation, Plaintiffs' damages were significantly under-valued. Dissatisfied, Plaintiffs sought the help of the attorneys and firm signing this pleading.

23.     There is no question that the Policy between Plaintiffs and Centauri covered the damages to Plaintiffs' Property as Hurricane Harvey was a covered peril under the Policy; therefore, Plaintiffs were and are entitled to receive all Policy benefits, among other damages available under the law and equity.

24.     Centauri intentionally chose and adopted a business model that provided for retaining very few, if any, qualified adjusters as employees or retaining any qualified outside adjusters to perform Centauri's non-delegable duties of investigating claims in accordance with applicable Texas law. Further, it is equally as clear, that Centauri either had no procedures or had inadequate procedures to monitor or regularly audit the work product of its adjusters and claims personnel. Centauri was reasonably aware, knew, or should have known, that the claim estimates generated by its adjusters, inclusive of the estimate at issue in this case, were wholly deficient by any measure under the Policy and applicable law and were likely to result in a denial or a considerable underpayment of a claim.

25.     Insurance companies, like Centauri, compensate its adjusters and/or claims personnel by incentivizing them to exclude or artificially minimize the amount of storm-related damages payable under its policies. The adjusters accepted these terms knowing that they would likely cause their inspections and resulting claim estimates to be minimal, and that they were engaging in claims handling procedures for which they were neither qualified nor properly trained to sufficiently undertake.

26.     The Policy between the Russells and Centauri covered the Harvey damages to the Russells' Property. Therefore, the Russells are entitled to receive all Policy benefits. There is no question that Centauri undervalued the majority of damaged items as well as without merit denied others. As a result, resolution of the Russells' Claim has been delayed by the deficient and improper claims

handling by Centauri, Gibson and Mid-America. Due to a lack of sufficient funds, the Russells have not yet been able to fully repair their Harvey damages.

27.     By wrongfully denying proper payments to Plaintiffs and wholly failing to properly handle Plaintiffs' Claim, Centauri breached the duty of good faith and fair dealing owed to Plaintiffs as insureds in an insurance contract with Centauri. "Good faith and fair dealing" is defined as the degree and diligence which a man of ordinary care and prudence would exercise in the management of one's own business. *Arnold v. Nat'l Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). A special relationship exists as a result of the "unequal bargaining power" between policyholders like the Russells and Centauri (the insurer) because the insurer has the ability to more easily take advantage of the insured due to an insurer's exclusive control over the evaluation, processing, and denial of claims. In legal terms, this unlevel playing field resulting in a "special relationship" justifies the imposition of a common-law duty on insurers to deal fairly and in good faith with their insureds. Centauri breached its common-law duty by failing to deal fairly and in good faith with its insureds, the Russells.

28.     Centauri's conduct was not only a breach of its common law duty to deal fairly and in good faith with Plaintiffs based on this "special relationship" between the parties, but also constitutes a breach of the insurance contract between Centauri and Plaintiffs. Over a century ago, Justice Learned Hand wrote: "[a] contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent." *Hotchkiss v. Nat'l City Bank,* 200 F. 287, 293 (S.D.N.Y. 1911).

29.     The insurance Policy between Plaintiffs and Centauri is a contract wherein the insurance company, Centauri, offers to provide insurance coverage and services associated therewith in exchange for the policyholder's payment of annual premiums in consideration of the contract.

Texas law recognizes a cause of action for breach of contact. Pursuant to Texas law, either party to the contract can initiate legal action against the other party for violations of that contract that causes damages. A breach of contract claim is distinct and independent from a tort claim such as a breach of the duty of good faith and fair dealing or a violation of statutory or other extra-contractual claims. Tort and contract claims are separate and independent, yet they are factually interwoven, and the same evidence is often admissible on both types of claims in an insurance policy claim dispute.

30.     Here, Centauri failed to perform its contractual duties to adequately compensate the Plaintiffs under the terms of the Policy. Specifically, Centauri refused to pay the full proceeds of the Policy, although due notice was made for proceeds to be paid in an amount sufficient to cover the damaged Property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs. Thus, from and after the time Plaintiffs' Claim was presented to Centauri, the liability of Centauri to pay the full Claim in accordance with the terms of the Policy was reasonably clear. However, Centauri refused to pay Plaintiffs in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment. Centauri's conduct has caused the Russells to lose Policy benefits to which they were entitled, and which should have been paid by Centauri, but were not. Centauri's conduct constitutes a breach of contract as well as a breach of the common law duty of good faith and fair dealing.

31.     Centauri's conduct includes various torts, such as violations of the Texas Insurance Code. Here, in Texas, the vast majority of insurance policies, including Centauri's Policy contract with Plaintiffs, do not contain provisions to account for an insurance company's and/or its representatives' (improper) acts or omissions undertaken through their handling of a claim; which incidentally, affects the duration and outcome of the claim, and otherwise, to policyholders'

detriment. To account for such acts and omissions that fall outside the four-corners of the contract language (but nonetheless affect the claim and/or detrimentally harm the policyholder), the Texas Legislature in 1973 enacted the Texas Deceptive Trade Practices—Consumer Protection Act (the "DTPA") to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions…and to provide efficient and economical procedures to secure such protections." Tex. Bus. & Com. Code §17.44. Specifically, the DTPA provides that a consumer may maintain an action where an insurance company (or one of its employees or agents) commits an act or practice in violation of Chapters 541 and/or 542 of the Texas Insurance Code. Tex. Bus. & Com. Code §17.50. These enumerated acts (as found within Chapters 541 and 542 of the Texas Insurance Code) are generally not included within the written contractual terms of the insurance policy. These two bodies of law (contract and tort) are neither overlapping, nor mutually exclusive. Rather, they are entirely independent issues under independent bodies of law with unique causes of action and damages available.

32.     A later Texas Legislature specifically created and enacted the Texas Insurance Code to protect consumers, like the Russells, and to regulate insurance professionals, like Defendant Centauri and Mid-America because the language of insurance policy contracts (without more) were not properly serving those functions. Chapters 541 and 542 of the Texas Insurance Code include duties and obligations that any person or entity engaged in the business of insurance in the State of Texas must follow. Those duties and obligations are wholly independent of those for which an insurer may be contractually responsible. Specifically, Chapter 541 of the Texas Insurance Code states that; "the purpose of this chapter is to regulate trade practices in the business of insurance by: (1) defining or providing for the determination of trade practices in this state that are unfair methods of competition or unfair or deceptive acts or practices; and (2) prohibiting those trade

practices." Chapters 541 and 542 of the Texas Insurance Code describe various claim settlement practices, among extensive other rules and requirements with which anyone engaged in the business of insurance in the State of Texas must comply and not violate; as well as deceptive, unfair, and prohibited practices with which anyone engaged in the business of insurance in the State of Texas must not engage or undertake. Insurance policies in Texas, such as the Centauri Policy, are silent as to these statutory provisions.

33.     Centauri voluntarily assumed a non-contractual obligation to inspect and value Plaintiffs' damages, thereby causing its conduct to be governed by the applicable provisions of the Texas Insurance Code. However, Centauri then failed to comply with its obligations and duties under the law for inspecting and valuing covered losses, and likewise, failed to perform its contractual duty to adequately compensate Plaintiffs for monies owed to them under the Policy.

34.     Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Centauri's and its agents made misrepresentations by means of deceptive conduct by failing to conduct a reasonable inspection and investigation of Plaintiffs' damages. Centauri has committed tort(s) with its numerous misrepresentations, violations of the Texas Insurance Code and otherwise. Specifically, Centauri and its personnel, including but not limited to Gibson and Cupit, violated Chapter 541 of the Texas Insurance Code by misrepresenting to the Plaintiffs that some damages to the Property were not covered under the Policy, even though the damages this Property sustained were caused by a covered occurrence. Centauri, Gibson, Mid-America and Cupit, violated the Texas Insurance Code by undervaluing and under-scoping the damages the Plaintiffs' Property incurred and continues to incur. Centauri's misrepresentations caused Plaintiffs to suffer "actual damages", which, under the Texas Insurance Code, are those recoverable at common law, as well

as reasonable and necessary attorney's fees, and any other damages. Additionally, for violations of Chapter 541 of the Texas Insurance Code, that law entitles Plaintiffs to recover court costs, reasonable and necessary attorney's fees, and any other relief the Court determines is proper. TEX. INS. CODE §541.152. Centauri, Gibson, Mid-America, and Cupit's conduct, as described above and herein, constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices, TEX. INS. CODE §541.060(a)(1).

35.     Centauri, Gibson, Mid-America, and Cupit, failed to make an attempt to settle Plaintiffs' Claim in a prompt, fair, and/or equitable manner, although they were aware of their liability to the Plaintiffs. As such, Centauri's conduct in this regard constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A). Specifically, Centauri, and Gibson's failure to properly investigate, their undervaluation of the Claim, and conduct otherwise, caused the Plaintiffs to lose Policy benefits to which they were entitled, and which should have been paid initially and timely by Centauri but were not. Further, Centauri, Gibson, Mid-America, and Cupit's conduct necessitated that Plaintiffs retain the services of an attorney to attempt to be made whole as it relates to Plaintiffs' Harvey damages. Plaintiffs are entitled to recover actual damages for Defendants' violation of this section of the Texas Insurance Code. *Id*.

36.     Centauri, failed to explain to the Plaintiffs the reasons for their inadequate claim payment and/or settlement, and failed to explain the reason why full payment was not being made. Furthermore, Centauri neither communicated that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor provided any explanation for the failure to adequately resolve Plaintiffs' Claim. As such, Centauri's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3). Centauri's conduct caused Plaintiffs to suffer actual damages and lose Policy benefits to which

they were entitled, and which should have been paid initially by Travelers, but were not. Plaintiffs, therefore, are entitled to recover Policy benefits, as actual damages as well as attorney's fees and costs for Centauri's violation(s) of this section of the Texas Insurance Code. *Id.*

37.     Furthermore, Centauri failed to affirm or deny coverage of Plaintiffs' Claim within a reasonable time. Specifically, Plaintiffs did not receive from Centauri a timely, written indication of acceptance or rejection of Plaintiffs' full and entire Claim. Centauri's conduct constitutes a violation of Section 541.060(a)(4) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(4). Centauri's conduct caused Plaintiffs to lose Policy benefits to which they were entitled, and which Centauri should have paid Plaintiffs initially, in full. Plaintiffs therefore, are entitled to recover Policy benefits as actual damages for Centauri's violation of this section of the Texas Insurance Code as well as all other damages to which they are entitled to under the relevant law. *Id.*

38.     Finally, Centauri, Gibson, Mid-America, and Cupit, failed to conduct a reasonable investigation and refused to fully compensate Plaintiffs under the terms of the Policy. Specifically, Centauri, Gibson, Cupit and Mid-America, performed an outcome-oriented investigation of Plaintiffs' Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property. Centauri, Gibson, Mid-America, and Cupit's conduct constitutes a violation of Section 541.060(a)(7) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(7). Defendants' caused Plaintiffs to lose Policy benefits to which they were entitled, and which Centauri, as insurer, should have paid initially, in full, but failed to do so. Plaintiffs therefore, are entitled to recover Policy benefits as actual damages as well as attorney's fees and costs for violations of this section of the Texas Insurance Code, among other damages. *Id*.

39.     After receiving notice of Plaintiffs' Claim, Centauri failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' Claim, beginning an investigation of Plaintiffs' Claim, and requesting all information reasonably necessary to investigate Plaintiffs' Claim within the statutorily mandated time of receiving notice of Plaintiffs' Claim. Centauri's conduct is a violation of Section 542.055 of the Texas Insurance Code Prompt Payment Claims Act. *See* TEX. INS. CODE §542.055. Centauri's conduct caused Plaintiffs to suffer actual damages which includes the loss of Policy benefits to which they were entitled, and which should have been paid by Centauri but were not. Plaintiffs, therefore, are entitled to recover Policy benefits as actual damages, as well as attorney's fees, interest, costs, and all other amounts to which they are entitled, for Centauri's violations of this section of the Texas Insurance Code. *Id.*

40.     Centauri failed to accept or deny Plaintiffs' full and entire Claim within the statutorily mandated time of receiving all necessary information. Centauri's conduct constitutes a violation of Section 542.056 of the Texas Insurance Code, Prompt Payment of Claims Act. *See* TEX. INS. CODE §542.056. Centauri's conduct caused Plaintiffs to suffer actual damages which constitutes the loss of Policy benefits to which they were entitled, and which Centauri should have paid, in full. Plaintiffs therefore, are entitled to recover Policy benefits as actual damages as well as attorney's fees, interest, costs and all other amounts to which they are entitled, for Centauri's violations of this section of the Texas Insurance Code. *Id.*

41.     Centauri failed to meet its obligations under the Texas Insurance Code regarding payment of Plaintiffs' Claim without delay. Specifically, Centauri delayed full payment of Plaintiffs' Claim longer than allowed, and, to date, Plaintiffs still have not received full payment of their Claim. Centauri's conduct constitutes a violation of Section 542.058 of the Texas Insurance Code, Prompt Payment of Claims Act. *See* TEX. INS. CODE §542.058. As a result of Centauri's violation of

Section 542.058 of the Texas Insurance Code, Plaintiffs' lost Policy benefits to which they were entitled, and which Centauri should have paid them timely and in full. Plaintiffs, therefore, are entitled to recover Policy benefits as their actual damages as well as attorney's fees, interest, costs and all other amounts to which they are entitled, for Centauri's violations of this section of the Texas Insurance Code. *Id.*

42.    From the time Plaintiffs' Claim was presented to Centauri, the liability of Centauri to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Centauri has refused to pay Plaintiffs in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny full payment. Centauri's conduct constitutes a breach of the common law duty of good faith and fair dealing.

43.    Additionally, Centauri, Gibson, Mid-America, and Cupit, knowingly and/or recklessly made false representations, as described above and herein, as to material facts and/or knowingly concealed from the Plaintiffs all or part of material information relevant to their Claim.

44.    As a result of Centauri, Gibson, Mid-America, and Cupit's wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the attorneys and law firm who are representing them with respect to these causes of action and whose signatures appear below on this pleading.

45.    Plaintiffs' experience is not an isolated case. The acts and omissions of Centauri, Gibson, Mid-America, and Cupit, committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Centauri, Gibson, Mid-America, and Cupit with regard to handling these types of claims. Centauri's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders, like the Russells here.

46.     Centauri is liable to the Russells for breach of contract, as well as violations of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing. Centauri and Gibson also committed several violations of the Texas Insurance Code.

47.     All conditions precedent to the Plaintiffs' claims for relief have been performed or have occurred and/or Defendants waived the same. This includes, but is not limited to, providing notice pursuant to Texas Insurance Code 542A and pre-litigation alternative dispute resolution, if any.

**CAUSES OF ACTION**:

**CAUSES OF ACTION AGAINST CENTAURI**

48.     Plaintiffs incorporate by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

49.     Centauri is liable to Plaintiffs for breach of contract, as well as violations of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing.

**COUNT I.**

**BREACH OF CONTRACT**

50.     Plaintiffs incorporate by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

51.     Centauri's conduct constitutes a breach of the insurance contract made between Centauri and Plaintiffs. Defendant Centauri's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendant Centauri's insurance contract with Plaintiffs.

**COUNT II.**

**NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
UNFAIR SETTLEMENT PRACTICES**

52.     Plaintiffs incorporate by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

53.     Centauri's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE §541.060(a)-§541.060(a)(7). All violations under this article are made actionable by Section 541.151 of the Texas Insurance Code. *See* TEX. INS. CODE §541.151.

54.     Centauri's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, is a violation of Section 541.060(a)(1) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(1).

55.     Centauri's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Defendant Centauri's liability under the Policy was reasonably clear, is a violation of Section 541.060(a)(2)(A) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(2)(A).

56.     Centauri's unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the Claim, is a violation of Section 541.060(a)(3) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(3).

57.     Defendant Centauri's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the Claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, is a violation of Section 541.060(a)(4) and constitutes an unfair method of

competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(4).

58.     Defendant Centauri's unfair settlement practice, as described above, of refusing to pay Plaintiffs' Claim without conducting a reasonable investigation, is a violation of Section 541.060(a)(7) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(7).

## COUNT III.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
### THE PROMPT PAYMENT OF CLAIMS

59.     Plaintiffs incorporate by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

60.     Defendant Centauri's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims Act. All violations made under this article are made actionable by Section 542.060 of the Texas Insurance Code. *See* TEX. INS. CODE §542.060.

61.     Defendant Centauri's failure to acknowledge receipt of Plaintiffs' Claim, to commence investigation of the Claim, and to request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of the Claim in violation of the Texas Insurance Code Section 542.055.

62.     Defendant Centauri's failure to notify Plaintiffs in writing of its acceptance or rejection of the Claim within the applicable time constraints, constitutes a non-prompt payment of the Claim. TEX. INS. CODE §542.056.

63.     Defendant Centauri's delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, took longer than the amount of

time statutorily allowed, as described above, and is a violation of Section 542.058. Such conduct constitutes a non-prompt payment of the Claim. *See* TEX. INS. CODE §542.058.

## COUNT IV.

### ACTS CONSTITUTING ACTING AS AGENT

64.     Plaintiffs incorporate by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

65.     As referenced and described above, and with further such conduct throughout this litigation and lawsuit, Gibson, Cupit and Mid-America, among others, are agents of Defendant Centauri based on their acts, for or on behalf of Travelers, during and after the handling of this Claim, including inspections, adjustments, and aiding in adjusting a loss of Plaintiffs' Policy benefits. *See* TEX. INS. CODE §4001.051.

66.     Separately, and/or in the alternative, as referenced and described above, Defendant Centauri ratified the actions and conduct of its agents and personnel, including the completion of their duties under the common law and statutory law.

## COUNT V.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

67.     Plaintiffs incorporate by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

68.     Because an insurer has the ability and more easily can take advantage of the insured due to an insurers' exclusive control over the evaluation, processing and denial of claims, insurance companies and their policies present an inherent "unequal bargaining power." In legal terms, this unlevel playing field results in a "special relationship" between an insurer and an insured and further justifies the imposition of a common law duty on insurers to "deal fairly and in good faith" with their insureds.

69.     Centauri's conduct however, as described herein, constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts. Centauri failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy. Specifically, Centauri refused to pay the full proceeds of the Policy, although due notice was made for proceeds to be paid in an amount sufficient to cover the damaged Property and to restore it to its condition before Harvey. Thus, from and after the time Plaintiffs' Claim was presented to Centauri, the liability of Centauri to pay the full Claim in accordance with the terms of the Policy was reasonably clear and there was no basis upon which a reasonable insurer would have relied to deny the full payment.

70.     Centauri's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' Claim, and to pay the full proceeds of the Policy, although, at that time, Centauri knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing owed to Plaintiffs. Defendant Centauri's conduct has caused Plaintiffs to lose Policy benefits to which they were entitled, and which Centauri should have paid, in full.

## COUNT VI.

### NONCOMPLIANCE BY GIBSON, MID-AMERICA, AND CUPIT WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

71.     Plaintiffs incorporate by this reference each and all of the factual allegations contained herein as though fully set forth here.

72.     Centauri assigned the adjusting company, Mid-America, to adjust Plaintiffs' Claim and Centauri and/or Mid-America assigned Gibson as the individual adjuster of Plaintiffs' Claim. Centauri assigned Cupit as the Claims Examiner or inside adjuster responsible for overseeing

Plaintiffs' Claim. Centauri and Cupit both had responsibility for overseeing Gibson's adjustment of Plaintiffs' Claim. Gibson, however, was improperly trained to handle claims of this nature; thus, Gibson performed an unreasonable investigation of Plaintiffs' damages. He omitted covered damages from his report, including major damaged portions of the roof. The damages that were included by Gibson in his estimate were underestimated. Gibson was inadequately trained to adjust Plaintiffs' homeowners' Claim. As a result of Gibson's improper training, Gibson performed an unreasonable investigation, and therefore, failed to properly assess Plaintiffs' Harvey damages.

73.     Gibson's conduct, along with Cupit's, and Mid-America's, the latter assigned as the principle overseer to Plaintiffs' Claim, violated the Texas Insurance, including Section 541.060(a). All violations under this are made actionable by TEX. INS. CODE §541.151.

74.     Gibson and Cupit are individually liable for their unfair and deceptive acts, regardless of the fact that they were agents of Centauri, because they are each a "person" as defined by TEX. INS. CODE §541.002(2). The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster or life and health insurance counselor."TEX. INS. CODE §541.002(2); *see also, Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability).

75.     Gibson, Cupit's and Mid-Americas' misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiffs' damages; (2) stating that Plaintiffs' damages were less severe than they in fact were; (3) using their own statements about the non-severity of the damages as a basis for denying properly

covered damages and/or underpaying damages; and (4) failing to provide an adequate explanation for the inadequate compensation Plaintiffs' received. Gibson and Cupit's unfair method and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(A)(1).

76.     Gibson's Mid-America, and Cupit's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though liability under the Policy for Plaintiffs was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice of the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

77.     Gibson, Mid-America and Cupit failed to explain to Plaintiffs the reasons for the offer of an inadequate settlement. Specifically, Gibson, Mid-America and Cupit failed to offer Plaintiffs adequate compensation without any explanation as to why full payment was not being made. Furthermore, Gibson, Mid-America and Cupit did not communicate that any future settlements or payments would be forth coming to pay for the entire losses covered under the Policy nor did they provide any explanation for the failure to adequately settle Plaintiffs' Claim. The unfair settlement practiced of Gibson, Mid-America and Cupit as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiffs' Claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

78.     Gibson, Mid-America, and Cupit did not properly inspect the Property and failed to account for and/or undervalued many of Plaintiffs' exterior and interior damages, although reported by Plaintiffs to Centauri at the time Plaintiffs' filed their Claim. Defendants Gibson and Cupit fully adopted and approved Gibson's substandard inspection. Gibson, Mid-America and Cupit's unfair

settlement practice, as described above; of refusing to pay Plaintiffs' Claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

### CLAIMS AGAINST ALL DEFENDANTS

## COUNT VII

### FRAUD

79.     Plaintiffs incorporate by this reference each and all of the factual allegations contained herein as though fully set forth here.

80.     Defendants Centauri, Gibson, Mid-America and Cupit are liable to Plaintiffs for fraud.

81.     Each and every one of the representations, as described above, concerned material facts for the reason that absent such representations, Plaintiffs would not have acted as they did, and which Defendants knew were false or made them recklessly without any knowledge of their proof as a positive assertion.

82.     The statements were made with the intention that they should be acted by Plaintiffs, who in turn acted in reliance upon statements, thereby causing Plaintiffs to suffer injury and constituting common law fraud.

## COUNT VIII

### CONSPIRACY TO COMMIT FRAUD

83.     Plaintiffs incorporate by this reference each and all of the factual allegations contained herein as though fully set forth here.

84.     Defendants Centauri, Gibson, Mid-America and Cupit are liable to Plaintiffs for conspiracy to commit fraud. Defendants were members of a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by unlawful means. In reaching a

meeting of the minds regarding the course of action to be taken against Plaintiffs, Defendants committed an unlawful, overt act to further the object or course of action to deny or underpay Plaintiffs' Claim. Plaintiffs suffered injury as a proximate result of Defendants' conduct.

## KNOWLEDGE

85.     In support of the causes of action set forth herein, Plaintiffs' incorporate by reference the factional allegations in the foregoing |paragraphs as if fully set forth verbatim herein.

86.     Each of the acts described above and herein, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code and was a producing cause of Plaintiffs' damages described herein.

## DAMAGES

87.     In support of the causes of action set forth herein, Plaintiffs' incorporate by reference the factional allegations in the foregoing |paragraphs as if fully set forth verbatim herein.

88.     Plaintiffs will show that all the acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

89.     As previously mentioned, the damages caused by Harvey have not all been properly addressed, or repairs made in the months since, causing further damages to the Property, as well as undue hardship and burden to Plaintiffs. These additional damages are a direct result of Centauri, Gibson, Mid-America, and Cupit's mishandling of Plaintiffs' claim in violation of the laws set forth above.

90.     For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain for their purchase of the Policy which is the amount of their Claim, together with attorney's fees under Section 38.001 of the Texas Civil Practices and Remedies Code. All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred and/or Centauri has waived the

same.

91.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, interest, and attorney's fees, and all other damages that they are entitled to. For knowing conduct of the acts described above, Plaintiffs ask for three times their actual damages under Section 541.152 of the Texas Insurance Code. *See* TEX. INS. CODE §541.152.

92.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims Act, Plaintiffs are entitled to their actual damages, as well as simple interest on the amount of their Claim as damages each year at the rate determined on the date of judgment, by adding five percent (5%) of the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees. *See* TEX. INS. CODE §542.060.

93.     For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

94.     For fraud, Plaintiffs are entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest and court costs.

95.     For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorneys whose names are subscribed to this Complaint. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the United States Court of Appeals

for the Fifth Circuit and/or the United States Supreme Court.

**JURY DEMAND**

96.     Plaintiffs hereby request that all causes be tried before a jury consisting of citizens residing in Harris County, Texas. Plaintiffs hereby tender the appropriate jury fee with the filing of this Complaint.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that upon trial hereof, Plaintiffs have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for prejudgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**Merlin Law Group, P.A.**

BY:     */s/ Rene M. Sigman*
        **\*Rene M. Sigman, Esq.**
        State Bar No. 24037492
        Fed. Bar No. 900984
        **Courtney L. Wadas**
        State Bar No. 24012560
        Fed. Bar No. 24596
        515 Post Oak Blvd, Suite 510
        Houston, Texas 77027
        (713) 626-8880 (Office)
        (713) 626-8881 (Facsimile)
        rmsdocket@merlinlawgroup.com
        **ATTORNEYS FOR PLAINTIFFS**
        \*Lead Counsel for Plaintiffs